# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VALERIE J. PANTHER,

          **Plaintiff,**

               **vs.**

SYNTHES (U.S.A.), SYNTHES
(U.S.A.) EMPLOYEE BENEFIT
PLAN, and SUN LIFE ASSURANCE
COMPANY OF CANADA,

          **Defendants.**

**CIVIL ACTION**
**No. 04-2183-GTV**

## MEMORANDUM AND ORDER

Plaintiff Valerie J. Panther filed this action against Defendants Synthes (U.S.A.), Synthes (U.S.A.) Employee Benefit Plan, and Sun Life Assurance Company of Canada pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.[1]  While employed with Synthes (U.S.A.) ("Synthes"), Plaintiff participated in an employee benefit plan sponsored by Synthes which provided long-term disability benefits to eligible participants.  Sun Life Assurance Company of Canada ("Sun Life") underwrote the benefits and made all disability determinations.  Plaintiff seeks judicial review of Sun Life's decision denying her long-term disability benefits.  Specifically, Sun Life concluded that Plaintiff failed to present satisfactory

---

[1] Count II of Plaintiff's First Amended Complaint asserted a state law breach of contract claim.  Plaintiff, however, conceded in her briefs that this claim was preempted by ERISA. Accordingly, the court dismisses Count II.

proof that she was unable to perform the material and substantial duties of her own occupation.

The case is before the court on Plaintiff's motion to compel production of documents (Doc. 34); to amend her First Amended Complaint by interlineation (Doc. 37); and for partial summary judgment (Doc. 52).   Also pending are Sun Life's motion for summary judgment (Doc. 22) and motion for a protective order (Doc. 38), and Synthes (U.S.A) Employee Benefit Plan's motion to dismiss Plaintiff's First Amended Complaint (Doc. 31).   For the following reasons, Plaintiff's motions are denied, Sun Life's motion for a protective order is granted, and Synthes (U.S.A.) Employee Benefit Plan's motion to dismiss is denied.   The court defers ruling on Sun Life's motion for summary judgment so that the parties may submit supplemental briefing in light of these rulings.

## I. Background

In October 2002, Valerie Panther was employed by Synthes as a sales consultant.   Synthes maintained an employee welfare benefit plan (hereinafter "the LTD plan") that provided to eligible employees, among other things, benefits in the event of total disability.   The disability benefits were funded by a group policy of long-term disability insurance issued to Synthes by Sun Life. The LTD plan and Summary Plan Description ("SPD") provided the following definition of total disability:

> Total Disability or Totally Disabled means during the Elimination Period and the next 60 months of Total Disability, the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation. After benefits have been paid for 60 months, the Employee will continue to be Totally Disabled if he is unable to perform all the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience.

2

Additionally, the terms of the LTD plan and SPD provided that a participant's "[p]roof [of disability] must be satisfactory to Sun Life" and that benefits were payable "when Sun Life receives satisfactory Proof of Claim."[2]

At all times relevant to this lawsuit, Ms. Panther was a participant of the LTD plan.  On January 27, 2003, Ms. Panther submitted a claim that she was totally disabled from performing the material and substantial duties of her own occupation as of October 1, 2002.  Ms. Panther's proof of claim was deemed satisfactory by Sun Life, and Sun Life paid monthly long-term disability benefits to her from January 2003 until January 2004.

On December 8, 2003, Sun Life sent a letter to Ms. Panther which stated:

We have completed a review of your claim for Sun Life disability benefits.  At this time, we are unable to extend further benefits to you.

. . . .

Based on the policy definition of total disability, you are not eligible for benefits.

Your claim was initially approved based on the job description your employer provided, however, we have to look at your occupation of a Sales Consultant as it is routinely done in the labor market, not specifically your job.  We determined that this was not initially performed, so we recently had an occupation analysis done by a vocational rehabilitation consultant.

Once the occupational analysis was complete we asked our medical consultant to review all of the medical documentation in your file to see if it supported your inability to perform your occupation as it is routinely done in the labor market.

---

[2]     The SPD names Synthes (U.S.A) as the plan administrator.  Sun Life, while stating that it is not the plan administrator, acknowledges that it is a fiduciary of the LTD plan because it exercises discretionary authority with respect to eligibility determinations and pays benefits.

. . . .

The medical documentation does not support your inability to perform the light duty occupation of Sales Consultant as it is routinely done in the labor market.

Based on this information, at this time, you do not meet the contractual definition of disability and you are not eligible for benefits. This review should have been done prior to the approval of your claim. We have paid you benefits since January 5, 2003 at $12,656.30 a month for a total amount of $146,223.27. Due to this being our error, we will not ask for this money back.

To avoid any financial hardship for you at this time we will pay you a benefit through January 31, 2004 in good faith.

On December 18, 2003, Ms. Panther asked Sun Life to review its denial of long-term disability benefits. She forwarded additional medical information to Sun Life along with this request, and then sent more information on January 8, 2004. On February 6, 2004, Sun Life sent Ms. Panther's attorney a written denial of long-term disability benefits.

## **II.  Discussion**

### A. Supplementation of the Administrative Record

The court initially considers Plaintiff's motion to compel production of documents (Doc. 34) and Sun Life's motion for a protective order (Doc. 38). These motions debate the permissible scope of discovery in an ERISA case. As a threshold matter, however, the court must determine which standard of review applies to this action, arbitrary and capricious or *de novo*.

1. Applicable Standard of Review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber

4

Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan grants the plan administrator or fiduciary discretion to determine eligibility for benefits or to construe the plan's terms, then the court applies an arbitrary and capricious standard.  Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998) (citations omitted); Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992).  The Tenth Circuit has instructed district courts "to focus precisely on what decision is at issue, because a plan may grant . . . discretion to make some decisions but not others."  Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1266 (10th Cir. 2002). Depending on the specific language of the plan, the standard of review for Sun Life's fact finding and the standard of review for Sun Life's interpretation of the plan may or may not be the same. Id.  It is the burden of the plan administrator or the fiduciary to establish that the arbitrary and capricious standard applies because "'the party claiming deferential review should prove the predicate that justifies it.'"  Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 244, 249 (2nd Cir. 1999) (citation omitted).

a.  Eligibility Decision

Whether the LTD plan grants Sun Life discretion to determine eligibility for benefits is easily resolved.  The LTD plan and SPD both provide that a participant's "[p]roof must be satisfactory to Sun Life."  Moreover, the LTD plan and SPD state that benefits are payable "when Sun Life receives satisfactory Proof of Claim."  In Nance v. Sun Life Assurance Company of Canada, the Tenth Circuit held that this identical language conveyed "discretion to Sun Life in finding the facts relating to disability," and thus Sun Life's decisions as a fact finder are reviewed under the arbitrary and capricious standard.  294 F.3d 1263, 1269 (10th Cir. 2002).

Sun Life, however, concedes that a conflict of interest exists because it is the insurer of the LTD plan and authorized to make all eligibility decisions as a fiduciary.   This conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115 (citation omitted).[3]   Specifically, the Tenth Circuit has adopted the "sliding scale" approach when a conflict of interest exists, decreasing the level of deference given to the denial of benefits depending on the seriousness of the conflict.   Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1004 (10th Cir. 2004) (citing Chambers, 100 F.3d at 825).   When an inherent conflict of interest exists, as it does here, this less deferential standard requires the plan administrator or fiduciary to prove the reasonableness of its decision under the traditional arbitrary and capricious standard.   Id. at 1006 (citation omitted).   Accordingly, because Sun Life admits that it is both the claims adjudicator and the claims payor, the court concludes that Sun Life bears the burden to prove that its decision to deny Plaintiff long-term disability benefits was reasonable under the arbitrary and capricious standard.

### b.  Interpretation of Plan

Plaintiff argues that the court should review Sun Life's interpretation of the LTD plan language *de novo* because the plan does not grant Sun Life discretion to construe the terms of the policy.  The court agrees.   Sun Life has failed to meet its burden of establishing that it had discretion to interpret the language of the LTD plan.

---

[3]     The Tenth Circuit does not distinguish between the terms "arbitrary and capricious" and "abuse of discretion" in the ERISA context.   Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 n.1 (10th Cir. 1996).

The Tenth Circuit in <u>Nance</u> assumed, without deciding, that the standard of review applicable to Sun Life's interpretation was *de novo*. 294 F.3d at 1266. In particular, the <u>Nance</u> court affirmed Sun Life's interpretation of the challenged language under the more stringent *de novo* review, and thus determined that Sun Life's interpretation could not be arbitrary and capricious. <u>Id.</u> at 1266, 1270. The court declines to rely on this same approach.

While the language "proof must be satisfactory to Sun Life" granted Sun Life discretion in finding the facts relating to disability, the court holds that the same language did not also grant Sun Life the discretion to construe the meaning of the terms contained in the plan. Sun Life does not argue otherwise. Rather, Sun Life maintains that its factual determination that Plaintiff was not disabled incorporated several findings, including what Plaintiff's own occupation is, the material and substantial duties of that occupation, and whether Plaintiff could perform those duties. While the court agrees that the LTD plan grants Sun Life discretion to make such factual findings, the court concludes that this discretion is distinct from a grant of discretion to interpret the meaning of "own occupation." Sun Life's letter to Plaintiff on December 8, 2003, stated that it based its initial decision on the job description provided by Plaintiff's employer, as opposed to her occupation as a sales consultant as it is routinely performed in the labor market. This decision, at least in part, was a result of Sun Life's interpretation of the plan.

<u>Nance</u> instructs the court to "focus precisely on what decision is at issue." <u>Id.</u> at 1266. As explained later, Plaintiff makes it a point to challenge Sun Life's interpretation of "own occupation," in addition to Sun Life's factual determination concerning the material and substantial duties of Plaintiff's own occupation. The court therefore applies a *de novo* review to Sun Life's

7

interpretation of the LTD plan's terms.

Accordingly, the court concludes that an arbitrary and capricious review  with a reduction in deference due to Sun Life's inherent conflict of interest, applies to Sun Life's decision that Plaintiff was not eligible for long-term disability benefits; and that *de novo* review applies to Sun's Life's interpretation of the LTD plan's terms.   Based on these determinations, the court will evaluate whether Plaintiff is entitled to discovery beyond the administrative record.

### 2.  Scope of Discovery

The Tenth Circuit's decisions in Sandoval v. Aetna Life & Casualty Insurance Company 967 F.2d 377 (10th Cir. 1992) and Hall v. UNUM Life Insurance Company of America, 300 F.3d 1197 (10th Cir. 2002) control whether Plaintiff may supplement the record.

"In determining whether the plan administrator's decision was arbitrary or capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."   Sandoval, 967 F.2d at 380 (citing Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir. 1990);  Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir. 1988); Danti v. Lewis, 312 F.2d 345, 349-50 (D.C. Cir. 1962)); see also Chambers, 100 F.3d at 823-24 ("Most circuits have held that in reviewing decisions of plan administrators under the arbitrary and capricious standard, the reviewing court may consider only the evidence that the administrators themselves considered.").   "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision."   Sandoval, 967 F.2d at 381 (citations omitted).

8

Under a *de novo* standard, a district court should ordinarily restrict its review to the administrative record, but it may supplement the record "'when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision.'" Hall, 300 F.3d at 1202 (quoting Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 (4th Cir. 1993)).   This rule provides "district courts with flexibility to admit additional evidence in limited circumstances . . . to address the varied situations in which the administrative record alone may be insufficient to provide proper de novo review." Id. at 1203.   "The party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review." Id.

In Hall, the Tenth Circuit "emphasize[d] that it is the unusual case in which the district court should allow supplementation of the record," but it provided the following non-exhaustive list of exceptional circumstances that could justify such a course of action:

> "claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process."

Id. (quoting Quesinberry, 987 F.2d at 1027).   Finally, even when these circumstances are present, "district courts are not required to admit additional evidence . . . because a court 'may well conclude that the case can be properly resolved on the administrative record without the need to

put the parties to additional delay and expense.'" Id.

Plaintiff states that she does not want to supplement the administrative record. Instead, she seeks discovery so that she may determine the legitimacy of Sun Life's fact-finding process. Plaintiff asserts that if the court is to determine whether Sun Life abused its discretion in making the decision to deny her benefits, the specific details of how Sun Life made that decision should be examined through discovery. Specifically, Plaintiff argues that she should be permitted to: discover any relevant documents or verbal communications not reduced to writing that Sun Life considered, but excluded from the administrative record; depose the decision makers to see what they actually utilized or considered from the administrative record (or outside the administrative record), including how the decision makers arrived at the definition of "own occupation"; discover how the process Sun Life utilized to determine her claim was similar or different from other claims, including all records of premiums collected and benefits paid for anyone participating in the Synthes plan from the date of its inception; discover any reserve Sun Life set for Plaintiff's claims; and find out the extent and seriousness of Sun Life's conflict of interest and how it affected its decision making process.

It is Sun Life's position that when the plan document grants discretion to the administrator, the court must limit its review to the administrative record that was before the administrator at the time it made its benefit determination. Thus, because Sun Life provided Plaintiff the administrative record, any other requests for discovery are not reasonably calculated to lead to the discovery of admissible evidence, are broad and overly burdensome, and may be protected by the attorney-client and work product privileges. Moreover, Sun Life characterizes Plaintiff's

discovery requests as a fishing expedition to find some document that somehow did not get included in the administrative record to undermine its decision.   Finally, Sun Life opposes Plaintiff's desire to interrogate its employees about their thought processes.

The court concludes that Plaintiff is not entitled to discovery beyond the administrative record.  The Tenth Circuit directs the court to look only at the arguments and evidence considered by Sun Life when the eligibility determination is subject to the arbitrary and capricious standard of review, as it is here.  Sun Life's inherent conflict of interest does not change this outcome.  <u>See</u> <u>Spangler v. UNUM Life Ins. Co. of Am.</u>, 38 F. Supp. 2d 952, 955 (N.D. Okla. 1999) (stating that when the conflict of interest is apparent, "additional discovery, limited solely to this issue of the conflict of interest, is not necessary").   Moreover, Plaintiff's desire to depose Sun Life's employees about the fact finding process and to discover whether they considered any information not included in the administrative record would only lead to the type of open-ended discovery that is contrary to the purpose of ERISA.  <u>See</u> <u>Sandoval</u>, 967 F.2d at 380 ("A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously."); <u>Perlman v. Swiss Bank Corp. Comprehensive Disability Prot.</u> <u>Plan</u>, 195 F.3d 975, 981 (7th Cir. 1999) (concluding, in a case subject to deferential review, that the district court erred by permitting discovery into UNUM's  decision-making process, including the thought processes of its employees and "in general who said what to whom within UNUM"). Finally, although Sun Life's interpretation of the plan is subject to *de novo* review, the court does not find any exceptional circumstances in this case requiring discovery as to Sun Life's construction of "own occupation."   The court concludes that it can resolve this issue without

burdening the parties with additional discovery.   Accordingly, Plaintiff's motion to compel production of documents (Doc. 34) is denied and Sun Life's motion for a protective order is granted (Doc. 38).

B.  Interpretation of "Own Occupation"

Next, Plaintiff's motion for partial summary judgment (Doc. 52) requests the court to: (1) decide whether the LTD plan granted Sun Life discretion to interpret the terms of the plan; and (2) decide, as a matter of law, that the language "all of the material and substantial duties of his own occupation" means Plaintiff's actual job at Synthes, as opposed to her job as it is routinely performed in the market.   The court has already held that the LTD plan did not grant Sun Life discretion to interpret the plan's terms.   As to the second issue, the court holds that "own occupation" means one's general profession, rather than one's specific duties for a particular employer.  Accordingly, Plaintiff's motion for partial summary judgment is denied.

Plaintiff asks the court to make its own *de novo* determination of the meaning of the policy term "own occupation."   Plaintiff states that it is clear from Sun Life's December 8, 2003, denial letter that the decision to deny her long-term disability benefits was due to Sun Life's determination that her "own occupation" was broader than her specific job at Synthes.   In other words, Plaintiff disputes that "own occupation" refers to the job of a sales consultant as it is routinely performed in the labor market, as opposed to the actual job Plaintiff performed at Synthes.

For support of her position, Plaintiff points out that Sun Life initially granted her benefits based on the particular job she performed at Synthes.   She also notes that Sun Life, during the

claim process, requested specific information from her and Synthes about the nature of her work. She contends that these requests are admissions from Sun Life that "own occupation" means the work she specifically engaged in.   Moreover, Plaintiff states that there is no way for the insured to know that the dictionary of occupational titles would be incorporated into the meaning of "own occupation."   Plaintiff believes that the term "own occupation" is ambiguous and asks the court to construe "own occupation" the way Sun Life initially defined the term.

Even under a *de novo* review, Sun Life asserts, its determination of "own occupation" was proper and Plaintiff's position is contrary to the language of the LTD plan and substantial case law. Sun Life maintains that it insured against the risk that Plaintiff would not be able to work in her chosen occupation, not the risk that she would be unable to perform her particular job at Synthes. Sun Life argues that "occupation" is a general term, and that when the LTD plan refers to Plaintiff's particular job, it does so clearly.   To that end, Sun Life cites to the LTD plan's definition of "Actively at Work," which "means that you perform all the regular duties of your job for a full work day scheduled by your Employer at your Employer's normal place of business. . . ."   Sun Life suggests that Plaintiff equates the ability to "perform the material duties of your own occupation" with the ability to "perform all the regular duties of your job for a full work day scheduled by your Employer at your Employer's normal place of business."   Furthermore, Sun Life states that it admitted nothing by requesting information about Plaintiff's work at Synthes because that information was relevant in determining her occupation.

When interpreting the terms of an ERISA plan, the court must "examine the plan documents as a whole and, if unambiguous, . . . construe them as a matter of law."   <u>Chiles v. Ceridian Corp.</u>,

95 F.3d 1505, 1511 (10th Cir. 1996).  Under a *de novo* review, the court should give "the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean."   Id.  (internal quotation marks and citations omitted).   "Words cannot be written into the agreement imparting an intent wholly unexpressed when it was executed."   Healthcare Am. Plans, Inc. v. Bossemeyer, 953 F. Supp. 1176, 1188 (D. Kan. 1996) (citation omitted).   Finally, the issue of whether an ambiguity exists is a question of law for the court.   Christie v. K-Mart Corp. Employees Ret. Pension Plan, 784 F. Supp. 796, 803 (D. Kan. 1992) (citation omitted).   "A lack of definition of contract terms does not require a finding of ambiguity."   Bossemeyer, 953 F. Supp. at 1188 (citation omitted).

Sun Life primarily relies on Ehren v. Dimension Works Incorporated Long Term Disability Plan, 120 F. Supp. 2d 1253 (D. Nev. 2000), to support its interpretation of "own occupation."   In Ehren, the policy stated that the plaintiff was disabled if he was "'unable to perform with reasonable continuity the material duties of [his] own occupation.'"   Id. at 1258.   The plaintiff, who worked as a controller for his employer, contended that the defendant violated the policy's language when it utilized the U.S. Department of Labor Dictionary of Occupational Titles to determine the duties of a controller.   Id. at 1258-59.   In particular, the plaintiff argued the language of the policy required the defendant to rely on the specific duties of his job, "rather than his 'occupation' as defined generally."   Id. at 1259.   The district court in Ehren disagreed, stating:

> This court finds that the term, "occupation," is a general description, not a specific one.   An insurer cannot be expected to anticipate every assignment an employer might place upon an employee outside the usual requirements of his or her occupation.   A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her

"occupation."  For example, a secretary is not disabled from his or her "occupation" just because he or she cannot perform additional tasks assigned by an employer, such as moving furniture or lifting heavy objects.

. . . .

The policy language clearly uses the word, "occupation."  Occupation is a general term.  The policy does not require disability from a particular job's or employer's requirements.

. . . .

To accept Plaintiff's argument that total disability means that a person cannot physically do some specifically assigned task, would permit employers and employees to arrange for some physically impossible task which the employee is unable to perform and then, based upon that inability, declare the employee totally disabled.  Such an interpretation would be entirely unreasonable.  The court finds that the application of the term, "own occupation," should be done generally, i.e., that the evaluation of disability should be made in light of the usual duties of that occupation and not depend on ad hoc peculiarities of a specific job or the requirements of a particular employer who may require activities beyond that generally contemplated by the "occupation."  Accordingly, [the defendant], in its administration of this Plan did not abuse its discretion in applying that definition of "own occupation."

Id.  On appeal, the Ninth Circuit agreed with the district court that the defendant "did not abuse its discretion in interpreting 'own occupation' to mean the insured's occupation."  Ehren v. Dimension Works Inc. Long Term Disability Plan, 33 Fed. Appx. 908, 910 (9th Cir. 2002).  The Ninth Circuit reasoned that the defendant's interpretation of "own occupation" was not an abuse of discretion because the general case law was split, prior Ninth Circuit level law favored the defendant, and "neither meaning contradict[ed] a plain reading of the policy."  Id.

Defendant also cites to several other cases to support its position.  See Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999) (holding that the plan administrator did not

abuse its discretion in determining that the plaintiff "could still work in her *own occupation* with *another employer*") (emphasis added); Gerhold v. Avondale Indus., Inc., No. 02-3386, 2004 WL 602778, at *11 (E.D. La. Mar. 23, 2004) (citations omitted) (concluding that the plan administrator did not abuse its discretion when it interpreted   "regular occupation" because "[d]istrict courts have routinely construed the term . . . to mean 'a position of the same general character as the insured's previous job, requiring similar skills and training , and involving comparable duties.'"); Garbers v. Reliance Standard Life Ins. Co., No. 3:00CV7652, 2001 WL 1222180, at *3 (N.D. Ohio Sept. 24, 2001) (determining that the defendant, when interpreting the term "regular occupation," did not abuse its discretion when it based "its eligibility determination on the general requirements of plaintiff's occupation, rather than on the specific requirements of her actual job"); Hanser v. Ralston Purina Co., 821 F. Supp. 473, 478 (E.D. Mich. 1993) (concluding, under an arbitrary and capricious review, "that defendant's interpretation of the terms 'regular occupation' as meaning the type of work which a covered employee is trained to perform rather than the specific job at which the employee was working . . . is a rational interpretation supported by the plain meaning of the words"); Ceasar v. Hartford Life & Accident Ins. Co., 947 F. Supp. 204, 207-08 (D.S.C. 1996) (concluding that the defendant did not abuse its discretion when it determined that the plaintiff could perform his "own occupation" as it existed in the national economy, as opposed to his particular job which required rotating shift requirements).

The court concludes that Sun Life properly defined "own occupation" to mean one's occupation as it is performed routinely in the labor market, rather than how a particular employee performed his or her job for a particular employer.  Although the cases cited by Sun Life were

decided under discretionary review, rather than *de novo* review, the court determines that the outcome is the same. The term "occupation" as used in the LTD plan is not ambiguous. Webster's Third New International Dictionary defines "occupation" as "[t]he principal business of one's life: a craft, trade, profession or other means of earning a living." Webster's Third New International Dictionary 1560 (1986). The plain meaning of "occupation" connotes a general characterization of a person's type of work, not the specific duties an individual performs for his or her employer. As Sun Life points out, the plan's definition of "Actively at Work" provides an example of language used to convey the specific duties of Plaintiff's work. Moreover, the LTD plan states that after Sun Life pays benefits for sixty months, the employee will continue to meet the plan definition of disability only "if he is unable to perform the material and substantial duties of *any occupation* for which he is or becomes reasonably qualified by education, training or experience." In this context, the terms "any occupation" are plainly general in nature, referring to any profession that the employee may be reasonably qualified. To construe the terms "own occupation" to mean the specific duties of one's work would create an inconsistency in the LTD plan's definition of total disability. Finally, as in <u>Ehren</u>, the court holds that Sun Life's utilization of the Dictionary of Occupational Titles is not contrary to the plan language of the plan. <u>See also</u> <u>Richards v. Hartford Life & Accident Ins. Co.</u>, 356 F. Supp. 2d 1278, 1287 (S.D. Fla. 2004) (citations omitted) ("When the term "occupation" is undefined, courts properly defer to the Department of Labor's Dictionary of Occupational Title's . . . definition of the term because insurers issuing disability policies 'cannot be expected to anticipate every assignment an employer might place upon an employee outside the usual requirements of his or her occupation.'").

### C. Remaining Motions

#### 1. Motion to Dismiss/Motion to Amend Complaint by Interlineation

Defendant Synthes (U.S.A) Employee Benefit Plan ("SEBP") moves the court to dismiss Plaintiff's First Amended Complaint (Doc. 31). SEBP argues that Count I of Plaintiff's First Amended Complaint contains a demand for judgment only against Sun Life. While SEBP acknowledges that it is named in the caption of Plaintiff's First Amended Complaint and is named as a party in Count I, it argues that Plaintiff's failure to demand a judgment as required by Fed. R. Civ. P. 8(a)(3) entitles it to be dismissed from this action. See Fed. R. Civ. P. 8(a)(3) (providing that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a demand for judgment for the relief the pleader seeks"); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 at 366 (2d ed. 1990) (stating that "any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient").

Plaintiff responds that her failure to include a prayer for relief against SEBP in Count I of her First Amended Complaint was in part through inadvertence, and in part through her belief that Sun Life would acknowledge that it was the fiduciary plan administrator of the LTD plan. Based on the pleadings filed, Plaintiff states that Sun Life has not acknowledged that it is has the fiduciary responsibility as plan administrator. As a result, Plaintiff moves to amend her First Amended Complaint by interlineation (Doc. 37) so that she may set forth a demand for judgment against SEBP, which would render SEBP's motion to dismiss moot and cover the possibility that Sun Life did not have the fiduciary responsibility as plan administrator. In particular, Plaintiff seeks to incorporate by reference Count I of her original complaint, which alleged a claim to

enforce her rights under ERISA against Synthes, as plan administrator, and SEBP, as a separate entity.

SEBP opposes such an amendment for several reasons.  First, it argues that the scheduling order provided that the deadline to file amended pleadings and adding parties was October 12, 2004, so Plaintiff's request is untimely.  Second, SEBP observes that Plaintiff initially sought to file her First Amended Complaint so that she could "refine her claims" and eliminate Synthes as a defendant.  Bringing back Synthes, SEBP suggests, would be extremely prejudicial to both Synthes and SEBP.  Finally, SEBP argues that amendment would be futile because of Sun Life's admissions of record regarding its fiduciary status.

The court will not dismiss SEBP from Plaintiff's First Amended Complaint because of Plaintiff's failure to include a demand for judgment against SEBP.[4]  The court grants Plaintiff ten days from the date of this order to file a second amended complaint that includes a demand for judgment against SEBP in Count I.  The court will dismiss SEBP from this action if Plaintiff fails to do so.  Plaintiff, however, may not amend her complaint to include a claim against Synthes.  The court concludes that it would cause undue prejudice to Synthes to bring it back as a defendant after the court's scheduling deadline to add parties and after Plaintiff amended her original complaint for the very purpose of refining her claims and eliminating Synthes as a defendant.

Accordingly, SEBP's motion to dismiss (Doc. 31) is denied and Plaintiff's motion to amend by interlineation (Doc. 37) is denied.  Plaintiff may amend her complaint as directed above.

---

[4]      The issue of whether Sun Life is the only proper defendant is not before the court.

2.  Sun Life's Motion for Summary Judgment

Sun Life's Motion for Summary Judgment (Doc. 22) argues that its decision denying Plaintiff long-term disability benefits should be affirmed unless it was arbitrary and capricious. In light of the court's rulings on the applicable standard of review, the availability of discovery, and the meaning of "own occupation," the court will grant the parties the opportunity to file supplemental briefing in support of and in opposition to Sun Life's motion for summary judgment. Accordingly, the court grants Sun Life fifteen days from the date of this order to file a supplemental brief.  Plaintiff shall have fifteen days from the date Sun Life files its brief to file her own supplemental brief.  The court will then take Sun Life's motion for summary judgment under consideration.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's motion to compel production of documents (Doc. 34) is denied and Sun Life's motion for a protective order (Doc. 38) is granted.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment (Doc. 52) is denied.

IT IS FURTHER ORDERED that Synthes (U.S.A.) Employee Benefit Plan's motion to dismiss Plaintiff's First Amended Complaint (Doc. 31)  and Plaintiff's motion to amend her First Amended Complaint by interlineation (Doc. 37) are denied.  The court grants Plaintiff ten days from the date of this order to file a second amended complaint as directed by this order.

IT IS FURTHER ORDERED that the court will defer ruling on Sun Life's motion for summary judgment (Doc. 22) until the parties have filed supplemental briefing as directed by this

order.

IT IS FURTHER ORDERED that Count II of Plaintiff's First Amended Complaint is dismissed.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 18th day of May 2005.


/s/ G.T. VanBebber
G. Thomas VanBebber
United States Senior District Judge