### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS


**VALERIE J. PANTHER**

      **Plaintiff,**


**v.**                         **Case No. 04-2183-JWL**


**SUN LIFE ASSURANCE
COMPANY OF CANADA,**


      **Defendant.**


### MEMORANDUM AND ORDER

      Plaintiff Valerie J. Panther filed this action against the defendant pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § § 1001-1461.[1] Sun Life underwrote the benefits and made all disability determinations regarding the employee benefit plan that Ms. Panther participated in while employed with Synthes U.S.A. ("Synthes"). Pursuant to 29 U.S.C. § 1132(a)(1)(B), Ms. Panther seeks judicial review of Sun Life's decision denying her long-term disability benefits. Specifically, Sun Life concluded that Ms. Panther failed to present satisfactory proof that she was unable to perform the material and substantial duties of her own occupation. The case is currently before the court on Sun Life's motion for

---

[1]The case was transferred to the undersigned judge after the death of Judge G. Thomas VanBebber.

judgment on the administrative record (doc. 88).  For the reasons set forth below, the case is once again remanded for further proceedings consistent with this opinion.

## I.     Factual Background and Procedural History

The prior orders of this case (docs. 66 and 72) set forth in detail the  factual background and procedural history of this case, up until June 28, 2005, which will not be repeated here.  *See Panther v. Synthes (U.S.A)*, 371 F.Supp.2d 1267 (D. Kan. 2005)(hereinafter *Panther I*) and *Panther v. Synthes (U.S.A)* 380 F. Supp. 2d 1198 (D. Kan. 2005)(hereinafter *Panther II*).

In *Panther II*, the court remanded this case for further proceedings.  Specifically, the court ordered Sun Life to have an independent medical investigation of Ms. Panther's medical condition conducted by a specialist, including an evaluation of her physical restrictions and limitations.  Furthermore, the court ordered Sun Life to clarify in the administrative record what it considers to be Ms. Panther's own occupation, the material and substantial duties of her own occupation, and which duty or duties Ms. Panther needs to be unable to perform to qualify as totally disabled.  The court also ordered that Ms. Panther was permitted to supplement the administrative record with any new medical evidence she had obtained since February 2004 regarding her back condition.  *Panther II*, 380 F. Supp. 2d at 1211.

On September 14, 2005, Karla Forgiel, a vocational rehabilitation counselor, prepared a seven page occupational analysis report to supplement her November 30, 2003 report, as requested by Sun Life in an effort to comply with the court's order in *Panther II*.  Based upon the Dictionary of Occupational Titles, a Department of Labor publication, Ms. Forgiel concluded that Ms. Panther's occupation as a medical sales consultant as routinely done in the labor market

was best described as light.  She further stated that the substantial and material physical duties include showing the medical instruments, which would involve lifting and carrying them.  She stated that in this particular situation, a case of medical instruments weighs ten to twenty pounds.  The occupation could also involve walking and standing to a significant degree.   In her conclusion, Ms. Forgiel stated that "Lifting and carrying of up to 20 pounds occasionally is routine in the occupation . . . a MEDICAL SALES CONSULTANT may need to transport one to eight cases from car to hospital, and this is routinely done via a wheelchair or cart."

On September 21, 2005, at the request of Sun Life, Ms. Panther was examined by Dr. Alexander J. Ghanayem, the chief of spine surgery at Loyola University Medical Center in Chicago, Illinois.  Sun Life provided Dr. Ghanayem with an affidavit from Ms. Panther, two sets of MRIs, Ms. Forgiel's report, and a brief background of the case.   Sun Life asked Dr. Ghanayem to assess Ms. Panther's medical condition as of October 1, 2002, and to identify whether she was physically restricted and/or limited from performing any of the material and substantial duties identified by Ms. Forgiel.   Sun Life made a specific request for Dr. Ghanayem's opinion regarding Ms. Panther's ability, given her condition in October 2002, to lift and push twenty or fewer pounds.

After conducting an examination of Ms. Panther and reviewing the materials provided by Sun Life,  Dr. Ghanayem stated that: "If the patient claimed to be totally disabled on 10/01/02, there would be a basis for that disability on a temporary basis if one were to consider the health ramifications of being pregnan[t] in the context of having a disk abnormality in her lumbar spine.  However, Dr. Ghanayem stated that the total disability would be temporary and

3

"should [be] resolved roughly 6 to 12 weeks postpartum."  In sum, Dr. Ghanayem concluded that, except for a brief period of time around the last trimester of her pregnancy and about twelve weeks after delivery, Ms. Panther was not totally disabled from her work activities.  Dr. Ghanayem stated that a lifting capability of twenty pounds was a reasonable expectation given Ms. Panther's condition.  He further concluded that although she has a radiographic condition consistent with a pain producing problem, it did not preclude her from working as a medical sales representative with appropriate restrictions.

On November 9, 2005, Ms. Panther's counsel sent a letter to Sun Life's counsel, expressing his displeasure with Ms. Forgiel's report and Dr. Ghanayem's medical examination. He opined that Ms. Forgiel's description of the substantial and material duties of Ms. Panther's occupation was "so general as to be meaningless" and suggested that the physical requirements of Medical Sales Consultant must include the following: lifting trays of instruments (each weighing 10-40 pounds) in and out of the trunk of her car and transporting those by cart in and out of hospitals and physician's offices, participating in surgeries which typically last 6-8 hours and involve wearing a 15-20 pound lead apron, driving 2-6 hours on certain days, and lifting trays of inventory in and out of her car.  Ms. Panther's counsel further expressed his concern with the discrepancy between the weight of the instrument trays; Ms. Panther and Synthes stated that the lifting per day was 40-80 pounds and Ms. Forgiel states that the trays weigh up to 20 pounds.  The letter also pointed out that Ms. Forgiel's report does not state what substantial and material duties Ms. Panther must be unable to perform to be totally disabled, as required by this court's June 28, 2005 order.

4

On November 4, 2005, Ms. Panther was examined by Dr. Dennison Hamilton, an orthopedic and occupational medicine physician. Dr. Hamilton requested another MRI scan, which was performed on November 9, 2005, and referred Ms. Panther to Exercise Therapy Consultants for a functional capacity evaluation (FCE), which was performed on November 10, 2005, by Janet Stone, a registered physical therapist. Based on the results of the physical examination, the MRI, and the results of the FCE, Dr. Hamilton concluded that Ms. Panther suffered from L5-S1 degenerative disc disease with protrusion. Based on this, Dr. Hamilton recommended that Ms. Panther refrain from lifting more than 9 pounds, carrying more than 16 pounds, driving for more than an hour at a time, and standing for more than an hour at a time.

The letter from Ms. Panther's counsel, Dr. Hamilton's medical report, the results of the MRI scan, and the FCE were subsequently submitted to Sun Life, who forwarded them on to Dr. Ghanayem for further evaluation. Dr. Ghanayem also received an affidavit from Ms. Panther, describing her limitations, and a letter from Carrie Tramm, a medical consultant for Synthes, describing the material and substantial duties of her occupation. Dr. Ghanayem's responses are included in two letters, one dated February 6, 2006, and another dated May 1, 2006. In the February 6 letter, Dr. Ghanayem concluded that the November 9 MRI did not change his opinions regarding Ms. Panther's condition. Dr. Ghanayem further elaborated on the restrictions he had mentioned in his September 21 letter, stating that, for example, Ms. Panther should lift medical trays one at a time as opposed to two or three at a time and should use a wheeled cart to transport multiple trays at once. Dr. Ghanayem also confirmed reviewing the letter from Ms. Tramm, but did not give it much weight because it described her own duties, rather than those

5

of medical sales representatives generally.  In the February 6 letter, Dr. Ghanayem commented on Dr. Hamilton's evaluation and the FCE.  He determined that Dr. Hamilton's report did not change his previously expressed opinions and that the FCE understated the work capability of someone with Ms. Panther's condition.

Ms. Panther's attorney sent another letter, dated May 5, 2006, containing information regarding the evaluation system used in the FCE. Sun Life rendered its ultimate decision, denying Ms. Panther long-term disability benefits, on May 11, 2006.  Sun Life discounted Dr. Hamilton's report and the FCE, relying predominantly on the opinions of Dr. Ghanayem and Ms. Forgiel in concluding that, as of October 2002, Ms. Panther could perform the material and substantial duties of a medical sales consultant, and accordingly that she was not "totally disabled" within the meaning of the Synthes group policy.[2]

On June 7, 2006, Ms. Panther filed a second amended complaint (doc. 80), alleging that Sun Life's May 11, 2006 decision erred because: (1) it failed to determine the material and substantial duties of Ms. Panther's own occupation, (2) it failed to determine that the phrase "your own occupation" contained within the policy was ambiguous, and (3) it failed to assess Ms. Panther's ability to stand for up to twelve hours a day, an allegedly material and substantial duty of her occupation.  Sun Life then filed the motion for judgment on the administrative record that is currently before the court, arguing that its denial of Ms. Panther's application for long

---

[2]The court notes that although Sun Life discounted the opinions of Dr. Hamilton and the Physical Therapist because they focused on Ms. Panther's condition in 2005 rather than in 2002, when the alleged disability began, it relied heavily on the opinion of Dr. Ghanayem, which appears to have the same deficiency because it indicated her *current* lifting capability, not her ability in 2002.

term disability benefits was not arbitrary or capricious, the decision was supported by substantial evidence, and that Sun Life was under no obligation to prove the reasonableness of its decision.

In opposition, Ms. Panther argues that Sun Life did not fully set forth the material and substantial duties of Ms. Panther's occupation because it failed to recognize that, in addition to the lifting requirements, the substantial and material duties of a medical sales consultant typically involved standing from 6-8 hours and periodically involved 2-6 hours of driving. Ms. Panther further argues that Sun Life failed to adequately evaluate whether Ms. Panther could perform these additional physical duties.[3]

## II.    Standard of Review

In *Panther II*, the court explained the standard of review: because Sun Life had discretionary authority to determine eligibility for benefits, an arbitrary and capricious standard of review applied to Sun Life's decision. *See Panther II*, 380 F. Supp. 2d at 1207 (citing *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998)).   The court also stated that because Sun Life is both the claims adjudicator and the claims payor, this indicates an "inherent conflict of interest," rather than a "standard conflict of interest," which requires that Sun Life prove the reasonableness of its decision under the arbitrary and capricious standard.

---

[3]Ms. Panther also argues that this court should re-address the issue of what is meant by the phrase "own occupation" as included in the policy.  Judge VanBebber considered this argument and addressed it at length in his previous order in this case. *See Panther 1*, 371 F. Supp. 2d at 1277-79. Accordingly, the court sees no reason to disturb Judge VanBebber's conclusion that "own occupation" as contained in the policy here means "one's occupation as it is performed routinely in the labor market, rather than how a particular employee performed his or her job for a particular employer." *Id*. at 1278.

7

*Panther II*, 380 F. Supp. 2d at 1207 (citing *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004)).  Sun Life argues that a more recent Tenth Circuit decision forces the court to re-evaluate the appropriate standard of review; specifically Sun Life argues it does not bear the burden of proving the reasonableness of its decision.  *See Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209 (10th Cir. 2006).

In *Adamson*, the Tenth Circuit recognized that there is an "inherent conflict of interest" when an insurer doubles as the plan administrator.  *Id*. at 1213 (citing *Fought*, 379 F.3d at 1006)(other citations omitted).   However, the court also stated that alone does not warrant a further reduction in deference.  *Id*.  The issue in *Adamson*, however, was not whether an insured was entitled to benefits, as is involved in this case.  Rather, the debate in *Adamson* turned on the appropriate level of coverage, which depended on information provided by the employer.  *Id*. In that situation, the Tenth Circuit described the role of the conflicted insurer/administrator as "ministerial" and accordingly decided to apply the "standard conflict," rather than the "inherent conflict," sliding scale of deference.  *Id*. at 1213-1214.

The court has reviewed the *Adamson* decision and finds it a unique modification based on the specific circumstances of that case.  Because *Adamson* does not overrule *Fought*, it must be read in harmony with *Fought*.  Accordingly, the court concludes that the rationale in *Adamson* applies in the rare circumstance when the inherent conflict of interest is merely nominal, and does not involve exercising judgment regarding the grant or denial of benefits.  Therefore, the court confirms that the standard of review expressed in its earlier order still applies in this case.

Sun Life must prove that its "interpretation of the terms of the plan is reasonable and that

its application of those terms to the claimant is supported by substantial evidence." *Fought*, 379 F.3d at 1006). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *Id.* (quotations and citations omitted). It requires "more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (internal quotations omitted). "In determining whether the evidence in support of the administrator's decision is substantial, we must take into account whatever in the record fairly detracts from its weight." *Caldwell*, 287 F.3d at 1282. The court must "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Panther II*, 380 F. Supp. 2d at 1207 (citing *Fought*, 379 F.3d at 1006).

Furthermore, as explained in this court's earlier opinion, the court does not examine defendant's motion under the traditional summary judgment standard. Based on the application of the Tenth Circuit's decision in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 & n.31 (10th Cir. 1994), the summary judgment standard is not the proper standard when evaluating a denial of ERISA benefits. Instead, the court acts as an appellate court and evaluates the reasonableness of a plan administrator or fiduciary's decision based on the evidence contained in the administrative record. *See Panther II*, 380 F. Supp. 2d at 1207 n.9.

## III.   Analysis

The court concludes that Sun Life's May 11, 2006 decision to deny Ms. Panther long term disability benefits was unreasonable because it addressed only *one* of the material and substantial

9

duties of her occupation.  Both Sun Life and Dr. Ghanayem failed to make any reference to the statement in Ms. Forgiel's report that the material and substantial duties of a medical sales consultant may "involve walking and standing to a significant degree."  Sun Life and Dr. Ghanayem also failed to address the contentions by Ms. Panther's counsel that at a minimum, in addition to the lifting duties, the substantial and material duties of a medical sales consultant typically involve the standing and driving requirements indicated above.  Ms. Forgiel's report never mentioned the driving requirement and she was never asked to further elaborate on either the standing or driving requirements asserted by Ms. Panther's counsel.

These omissions trouble the court, particularly because Ms. Forgiel's report, which was relied on so heavily by Sun Life and Dr. Ghanayem, primarily concentrated on the non-physical duties required of a medical sales consultant. As Sun Life points out, Ms. Forgiel's report includes a list of 35 bullet points describing the duties of a medical sales consultant; the court notes, however, that none of these items involve physical requirements, which are clearly the focus of Ms. Panther's disability claim in this case.  The only physical duties mentioned were the lifting of instrument trays and a vague reference to prolonged periods of walking and standing.[4]

At the very least, Sun Life should have required Dr. Ghanayem to specifically evaluate

_____

[4]The court realizes that a plausible explanation for so little focus on physical duties in Ms. Forgiel's report could be that a medical sales consultant simply does not engage in much physical activity.  However, this is not a reasonable conclusion based on the conflicting occupation descriptions in the record.  More information is necessary, such as a qualitative conclusion of how much physical activity medical sales consultants typically exert, perhaps framed as a percentage of the workday.

whether Ms. Panther was capable of prolonged periods of walking and standing, since these were listed as material and substantial duties in Ms. Forgiel's report.  Moreover, the court concludes that after Ms. Panther's counsel raised the issue of the standing and driving requirements in his November 9, 2005 letter, Sun Life should have questioned Ms. Forgiel to determine whether those should be considered material and substantial duties of a medical sales consultant.[5]  If they were in fact material and substantial duties, Sun Life should have requested that Dr. Ghanayem evaluate whether Ms. Panther was capable of fulfilling them.

Furthermore, although Sun Life's letter to Ms. Panther denying benefits states it has fully complied with this court's order from *Panther II*, the court disagrees.  Sun Life did permit Ms. Panther to supplement the administrative record and arranged for an independent medical examination to be conducted, but Sun Life failed to clarify which "duty or duties plaintiff needs to be unable to perform to qualify as totally disabled." *Panther II*, 380 F. Supp. 2d at 1211.

Finally, the court is concerned with Dr. Ghanayem's conclusion that there was a basis to support Ms. Panther's claim of total disability in October 2002, but that this "should be resolved roughly 6 to 12 weeks postpartum."  Dr. Ghanayem's indication that the disability "should be resolved" does not affirmatively indicate whether the disability was in fact "resolved." Moreover, because of their heavy reliance on Dr. Ghanayem's opinion in their letter denying benefits, Sun Life should have concentrated on Ms. Panther's condition  12 weeks after she gave

---

[5]The court specifically notes that the standing and driving requirements suggested by Ms. Panther's counsel are not totally outside the realm of possibility of duties that may be required in the general occupation as a medical sales consultant.  Therefore, particularly given Sun Life's conflict of interest, the court concludes Sun Life should have at least further investigated this assertion.

birth (sometime in early January 2003), rather than her condition in October of 2002. Accordingly, in light of Dr. Ghanayem's opinion, the court concludes that the parties should focus their efforts on determining Ms. Panther's condition as of early January 2003.

This is not a situation where it was so clearly unreasonable for Sun Life to deny Ms. Panther benefits as to warrant reversal.  However, in light of Sun Life's failure to comply with the court's previous order and its failure to sufficiently gather evidence relevant to the material and substantial duties of a medical sales consultant, the court concludes that a remand to Sun Life for further proceedings is appropriate.  *See DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451, F.3d 1161, 1175 (10th Cir. 2006)("In other words, we cannot say that there is no evidence in the record to support [the plan administrator's] decision, or that the evidence so clearly points the other way as to make a remand unnecessary."); *Rekstad v. U.S. Bankcorp*, 451 F.3d 1114, 1121 (10th Cir. 2006)(remanding case to insurer for failure to gather and examine relevant evidence); *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 773 n.5 (10th Cir. 2004)(concluding that when failure to investigate left inadequate grounds for the court to determine whether an administrator's decision could still be within the bounds of reason, merely reviewing the decision under reduced deference per *Caldwell* was inappropriate).

The case is hereby remanded to Sun Life for further proceedings consistent with this opinion.  As ordered previously, Sun Life must indicate which material and substantial duty or duties Ms. Panther must be unable to perform to qualify as totally disabled.[6]  Furthermore, Sun

---

[6]The court advises Sun Life that if it chooses to disregard this order once again, the court may consider that in and of itself unreasonable under the arbitrary and capricious standard, thus

Life must more fully set forth the *physical* material and substantial duties associated with a medical sales consultant.  This should include quantifiable standing and driving duties, if any, and not vague assertions of "prolonged" requirements.  Finally, Sun Life must evaluate whether Ms. Panther was able to perform the material and substantial duties of her occupation in early January of 2003.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendant's motion for judgement on the administrative record (doc. 88) is denied.  The case is remanded to defendant Sun Life for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated this 15th day of December, 2006.

_____
John W. Lungstrum
United States District Judge

---

justifying the reversal of a decision denying benefits.

13